The Honorable John C. Coughenour

FILED LODGED
FEB 15 2023
CLERK U.S. DISTRICT COURT
AT SEATTLE
WESTERN DISTRICT OF WASHINGTON
BY                                    DEPUTY

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RAJINDER PAL SINGH, aka JASPAL GILL, <br><br> Defendant. | NO. CR22-079 <br><br> **PLEA AGREEMENT** |

The United States of America, by and through Nicholas W. Brown, United States Attorney for the Western District of Washington, and Joseph C. Silvio, Assistant United States Attorney for said District, Defendant Rajinder Pal Singh, and Defendant's attorney, Chris Black, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1. **Waiver of Indictment**. Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to the charges brought by the United States Attorney in a Superseding Information.

2. **The Charges**. Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters pleas of guilty to each of the following charges contained in the Superseding Information.

Plea Agreement - 1
U.S. v. Singh, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a. Conspiracy to Transport and Harbor Certain Aliens[1] for Profit, as charged in Count 1, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (iii), and (v)(I), and (a)(1)(B)(i).

b. Conspiracy to Launder Monetary Instruments, as charged in Count 2, in violation of 18 U.S.C. §§ 1957 and 1956(h).

By entering these pleas of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering any guilty plea, Defendant will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

3. **Elements of the Offenses**. The elements of the offenses to which Defendant is pleading guilty are as follows:

    a. Conspiracy to Transport and Harbor Certain Aliens for Profit, as charged in Count 1, are as follows:

- First, there was an agreement between two or more persons to transport[2] and/or harbor[3] certain aliens; and
- Second, the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

    b. The elements of Conspiracy to Commit Money Laundering, as charged in Count 2, are as follows:

---

[1] The word "alien" is used in Title 8 of the United States Code. Throughout this plea agreement, and consistent with Executive Branch policy, when referencing the formal title of an offense in Title 8 of the United States Code, the term "alien" is used. When not specifically referring to the formal title of an offense in the United States Code, or the Ninth Circuit jury instructions setting-forth the elements of a particular Title 8 offense, the term "noncitizen" is used in lieu of the term "alien." When the word "noncitizen" is used in this plea agreement, it has the same meaning, in all material aspects, as the term "alien" as that term is defined in Title 8 of the United States Code.

[2] The elements of Alien-Illegal Transportation are: 1) [name] was an alien; 2) [name] was not lawfully in U.S.; 3) defendant knew/acted in reckless disregard of the fact that alien was not lawfully in the United States; and 4) the defendant knowingly transported/moved the alien to help him/her remain in the United States illegally.

[3] The elements of Alien-Harboring are: 1) [name] was an alien; 2) [name] was not lawfully in U.S.; 3) defendant knew/acted in reckless disregard of the fact that alien was not lawfully in the United States; and 4) defendant harbored, concealed, or shielded from detection the alien with intent to violate the law.

Plea Agreement - 2
U.S. v. Singh, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

        • There was an agreement between two or more persons to launder money;[4] and

        • The defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

4. **The Penalties**. Defendant understands that the statutory penalties applicable to the offenses to which Defendant is pleading guilty are as follows:

    a. For the offense of Conspiracy to Transport and Harbor Certain Aliens for Profit, as charged in Count 1: A maximum term of imprisonment of up to 10 years, a fine of up to $250,000, a period of supervision following release from prison of up to 3 years, and a mandatory special assessment of $100 dollars. If a probationary sentence is imposed, the probation period can be for up to five (5) years.

    b. For the offense of Conspiracy to Commit Money Laundering, as charged in Count 2: A maximum term of imprisonment of up to 10 years; a fine of up to $250,000; a period of supervision following release from prison of up to 3 years; and a mandatory special assessment of $100 dollars. If a probationary sentence is imposed, the probation period can be for up to five (5) years.

Defendant understands that supervised release is a period of time following imprisonment during which Defendant will be subject to certain restrictive conditions and requirements. Defendant further understands that, if supervised release is imposed and Defendant violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

---

[4] The elements of money laundering are as follows: (1) the defendant knowingly engaged or attempted to engage in a monetary transaction; (2) the defendant knew the transaction involved criminally derived property; (3) the property had a value greater than $10,000; (4) the property was, in fact, derived from the offense of Conspiracy to Transport and Harbor Certain Aliens for Profit; and (5) the transaction occurred in the United States.

Plea Agreement - 3
U.S. v. Singh, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Statement of Debtor form as requested by the United States Attorney's Office.

5. **Immigration Consequences**. Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States. Under federal law, a broad range of crimes are grounds for removal, and some offenses make removal from the United States presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, and Defendant understands that no one, including Defendant's attorney and the Court, can predict with certainty the effect of a guilty plea on immigration status. Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any immigration consequences that Defendant's guilty pleas may entail, even if the consequence is Defendant's mandatory removal from the United States.

6. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, Defendant knowingly and voluntarily waives the following rights:

   a. The right to plead not guilty and to persist in a plea of not guilty;

   b. The right to a speedy and public trial before a jury of Defendant's peers;

Plea Agreement - 4
U.S. v. Singh, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

   c. The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for Defendant;

   d. The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

   e. The right to confront and cross-examine witnesses against Defendant at trial;

   f. The right to compel or subpoena witnesses to appear on Defendant's behalf at trial;

   g. The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

   h. The right to appeal a finding of guilt or any pretrial rulings.

  7. **United States Sentencing Guidelines**. Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offense(s); (2) the history and characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the offense(s), to promote respect for the law, and to provide just punishment for the offense(s); (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of Defendant; (6) the need to provide Defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

Plea Agreement - 5
U.S. v. Singh, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

  a. The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

  b. After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. § 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

  c. The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

  d. Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

8. **Ultimate Sentence**. Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

9. **Statement of Facts**. The parties agree on the following facts and SINGH admits he is guilty of the charged offenses:

  a. Beginning no later than July 2018, SINGH had an agreement with others to transport and harbor certain noncitizens—specifically nationals of India—for profit. SINGH admits that the noncitizens who he, and others, transported, or caused to be transported, had entered and remained in the United States in violation of law, and that SINGH's transportation of these noncitizens was done for the purpose of helping these individuals remain in the United States unlawfully. SINGH further admits that with the intent to violate the law, he and other members of the conspiracy, harbored and shielded from detection by immigration authorities, noncitizens who had come to and entered the United States illegally. SINGH further admits that the conspiracy to transport and harbor noncitizens was for the purpose of private financial gain.

//

//

Plea Agreement - 6
U.S. v. Singh, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*The Noncitizen Smuggling Conspiracy*

b.  SINGH played a key role in the noncitizens smuggling conspiracy. Among the acts that SINGH took in furtherance of the conspiracy were: 1) arranging transportation for the smuggled noncitizens upon their unlawful entry into the United States; 2) coordinating the temporary lodging of the smuggled noncitizens within the Western District of Washington; and 3) making arrangements for, or coordinating with other co-conspirators, the transportation of the smuggled noncitizens from the Washington District of Washington to the noncitizens' ultimate destinations throughout the United States.

c.  Prior to the unlawful entry of the noncitizens into the United States, SINGH would coordinate with members of the conspiracy who housed the noncitizens in British Columbia. SINGH and his co-conspirators would discuss—among other matters related to the conspiracy—the location where the noncitizens would make their unlawful entry and the approximate time that the smuggling event would take place.

d.  Once an illegal crossing was underway, SINGH and his co-conspirators would use the Life360 App[5] to direct the smuggled noncitizens to walk to rendezvous points inside the United States. Once SINGH saw on the Life360 App that the group was close to their rendezvous point, SINGH would order an Uber—driven by an unwitting accomplice—to transport the smuggled noncitizens to various locations within the greater Seattle-area.

e.  These Uber trips always involved two legs. The first leg of the trip would originate at the rendezvous point near the U.S. – Canada border and would terminate at an intermediate location—most often Sea-Tac International Airport. The second leg would then commence from the vicinity of the prior drop-off location and

---

[5] The Life360 App is a family and social networking application that allows users to share their physical location – via the location of their cell phone – with members of their "circle." Location information is shared between circle members in real-time via a map-based interface.

Plea Agreement - 7
U.S. v. Singh, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

would terminate near a house located in Kent, WA, near a house owned by SINGH's spouse in Lacey, WA, or at motels in the greater Seattle-area.

  f. All told from mid-2018 until May 2022, using at least seventeen different Uber accounts—all with false identity information—SINGH arranged more than 600 trips involving the transport of Indian nationals who had been unlawfully smuggled into the United States by SINGH and his co-conspirators. The total cost of these Uber fares, which SINGH paid—via pre-paid credit cards or pre-paid Uber gift cards—exceeded $80,000. Moreover, these split Uber trips involved more than one-hundred different Uber drivers.

  g. In the earlier part of the conspiracy, the noncitizens smuggled by SINGH, and his co-conspirators, were temporarily housed at a residence in Kent, WA. This residence was operated by Co-conspirator 1 from late-2018 through March 2020. During the time that Co-conspirator 1 was managing the Kent residence, SINGH regularly communicated with Co-conspirator 1 about operations and provided notice to Co-conspirator 1 when additional noncitizens would be arriving at the house. Moreover, SINGH personally visited the Kent house multiple times throughout 2019.

  h. Once the noncitizens were at the Kent house, SINGH coordinated with other members of the conspiracy who arranged transportation to destinations throughout the United States. One of the main methods used by the smuggling organization to transport noncitizens outside the State of Washington was via one-way car rental. These vehicles typically would be rented at SeaTac International Airport and would be returned at or near Chicago O'Hare International Airport. The vehicles rented by SINGH's co-conspirators were always large SUVs or vans.

  i. In March 2019, Co-conspirator 2 made three Seattle to Chicago one-way rentals, and Co-conspirator 3 and Co-conspirator 4 each made one such rental. SINGH admits that all five of the one-way rentals in March 2019, contained noncitizens who SINGH and his co-conspirators had unlawfully smuggled into the United States.

Plea Agreement - 8
U.S. v. Singh, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

j. During a traffic stop of Co-conspirator 3 in Illinois on March 20, 2019, Winnebago County Sheriff's Deputies positively identified Co-conspirator 3 by his Washington State driver's license. The other seven individuals in the vehicle had no identification.

k. In July 2021, as soon as Canada eased pandemic-related travel restrictions,[6] SINGH and his co-conspirators resumed their noncitizen smuggling activities. SINGH and the larger organization no longer used the Kent, WA, house. Rather, SINGH began to use a Lacey, WA, residence—owned by his spouse—to harbor the smuggled noncitizens prior to arranging travel to their ultimate destination.

l. During the summer of 2021, the organization continued to use one-way rentals as a means of transporting smuggled noncitizens to destinations outside of Washington State. For example, in July 2021, SINGH brought two separate carloads of smuggled noncitizens—who had been temporarily housed by SINGH at the Lacey residence—to a gas station in Lacey, WA. While at the gas station, SINGH transferred twelve smuggled noncitizens to two rental vehicles that were driven by Co-conspirator 2 and Co-conspirator 3. Co-conspirators 2 and 3 then transported the smuggled noncitizens to their ultimate destination outside of Washington States.

### *The Money Laundering Conspiracy*

m. Given his role in the operation, SINGH obtained substantial proceeds from the conspiracy—these proceeds were received by SINGH in California, the Western District of Washington, and elsewhere. SINGH received proceeds via multiple means. In the moving of these illicit proceeds via the traditional banking system, the mail, and via other means in and affecting interstate commerce, SINGH conspired with multiple individuals to commit various money laundering offenses.

---

[6] Due to the global pandemic, the smuggling organization could not operate from mid-March 2020 through June 2021.

Plea Agreement - 9
U.S. v. Singh, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

n.   For example, in January 2022, SINGH participated in the unlawful smuggling of two Indian Nationals into the United States. Once SINGH and his co-conspirators had successfully smuggled these two individuals into the United States, SINGH requested—via a cooperating source ("CS-1") that unbeknownst to SINGH was working with law enforcement—payment of $11,000 per smuggled noncitizen. SINGH provided specific instructions to CS-1 for how the families of the individuals smuggled into the United States would pay the organization's smuggling fee.

o.   On February 2, 2022—after the funds had been sent via Hawala from India to New York—an HSI UCA picked up the $22,000 smuggling fee. Per SINGH's instruction, the cash received from the New York Hawala was converted to a cashier's check in the amount of $22,000. After the cash was converted to a Citibank cashier's check—again at SINGH's direction—the HSI UCA sent the $22,000 cashier's check from New York to a co-conspirator in Brandenburg, Kentucky.

p.   On February 7, 2022, Co-conspirator 5 deposited the $22,000 Citibank cashier's check into his personal checking account at Meade County Bank in Brandenburg, Kentucky, which has been federally insured by the Federal Deposit Insurance Corporation since 1984. Thereafter, and based upon agreement between SINGH, Co-conspirator 5, and a Canadian co-conspirator (Co-conspirator 6), the $22,000 in noncitizen smuggling proceeds was transferred by Co-conspirator 5 to his Robinhood Investment account. After moving the smuggling fees to the Robinhood account, Co-conspirator 5 made further arrangements to transfer these funds to Co-Conspirator 6 who resided in Canada. SINGH admits that the purpose of the above-referenced movement of funds was to obscure the nature and source of the proceeds of the noncitizen smuggling conspiracy.

q.   Additionally, during the course of the instant conspiracy, SINGH regularly accessed the main operating bank account (Acct -1219) for Iknaam Transport— a trucking company held in the name of SINGH's wife. During the time that SINGH was

Plea Agreement - 10
U.S. v. Singh, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

engaged in the noncitizen smuggling conspiracy, SINGH regularly made deposits, or caused deposits to be made, into Acct -1219.

    r.    For example, in September 2019, there were fourteen in-branch or ATM deposits—totaling $193,980—credited to Acct -1219. SINGH made six of these deposits—totaling $106,480. SINGH knew that at least $10,000 of these funds were in fact proceeds of a specified unlawful activity. Moreover, to the extent that any of these deposits were not derived from a specified unlawful activity, SINGH admits that the mixing of any legitimate funds, with proceeds of a specified unlawful activity, obfuscated the nature of the illicit proceeds.

    s.    From September 4, 2021, through November 2, 2021, over eight separate transactions—again at SINGH's direction—individuals with no business connection to Iknaam Transport made cash deposits into Acct -1219 totaling $78,300. These eight cash deposits were all between $9,500 and $9,900 and were made at Bank of America branches in Florida, Georgia, and Southern California. During the time of these deposits, SINGH was either in California, or the Western District of Washington. SINGH knew that at least $10,000 of these funds were in fact proceeds of a specified unlawful activity. Moreover, to the extent that any of these deposits were not derived from a specified unlawful activity, SINGH admits that the mixing of any legitimate funds, with proceeds of a specified unlawful activity, obfuscated the nature of the illicit proceeds.

    t.    SINGH also used Acct -1219 to pay expenses associated with the organization's noncitizen smuggling activities. Specifically, from January 2021, through May 2022, SINGH knowingly made, or caused to be made, transfers totaling more than $79,000 from Acct -1219 to SINGH's Capital One card, with the pseudonym "Jaipaul Singh." SINGH admits that one of the principal uses of this Capital One credit card was to pay for expenses related to the noncitizen smuggling conspiracy.

//
//

Plea Agreement - 11
U.S. v. Singh, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

***Submission of Fraudulent Documents in Immigration Bond Proceedings***

u.  SINGH also admits that as part of the noncitizen smuggling conspiracy, he generated fraudulent bond documents that were submitted in bond hearings before Immigration Judges in Tacoma, Washington. The fraudulent documents SINGH created used the identities of actual individuals, and included false letters of support and familial ties, doctored utility bills, and altered federal tax returns—purportedly showing that the bond "sponsor" had sufficient financial resources to support the noncitizen seeking release from immigration custody.

v.  SINGH sent these fraudulent bond packets via email to at least two immigration attorneys—J.G. and J.L.—who he had hired to represent noncitizens, smuggled by the organization, but who had been apprehended by immigration authorities upon their unlawful entry into the United States. Moreover, SINGH admits that he made, or caused to be made, from Acct -1219, multiple payments to immigration attorneys J.G. and J.L. for legal services provided to the detained noncitizens who had been unsuccessfully smuggled by SINGH and the larger smuggling organization.

***The Search of Singh's Residences***

w.  On May 24, 2022, investigators executed valid and lawful search warrants at SINGH's various residences in Elk Grove and Galt, CA, and Lacey, WA.

x.  At SINGH's residence located at 10074 Dona Neely Way, Elk Grove, CA, investigators seized $41,293 in U.S. currency, $3,470 in Canadian currency, $1,000 in Euros, a Metalor Switzerland 1 Ounce Gold Ingot, various high-end purses and handbags, a Tag Heuer watch, and miscellaneous jewelry. Additionally, in a home office, investigators seized at least one fraudulent identity document in the name of "Jaipal Singh," several Indian passports belonging to certain noncitizens who SINGH had smuggled into the United States, and copies of fraudulent bond paperwork that SINGH had caused to be submitted at bond hearings before Immigration Judges in Tacoma, WA.

Plea Agreement - 12
U.S. v. Singh, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

y. Investigators arrested SINGH at his residence located at 2743 Fiddleback St. NE, Lacey, WA. Investigators also encountered a noncitizen who SINGH, and his co-conspirators, had smuggled into the United States in the preceding days. From the Lacey residence, investigators seized $4,116 in U.S. Currency, a Secure Spend prepaid Mastercard, and an Uber gift card. In SINGH's vehicle, a 2010 Nissan Armada, investigators seized $231 in U.S. Currency.

z. At SINGH's residence located at 13461 Marengo Road, Galt, CA, investigators located a Sony laptop computer, an HP desktop computer, a Bitcoin mining device, an Akkar 12-gauge shotgun, and a box of shotgun shells.

aa. Defendant admits that the U.S., Canadian, and Euro currencies, as well as the prepaid credit/gift cards, that were seized at his residences, or in his vehicle, which are specifically identified as items a-g in the Superseding Information, were the proceeds, or purchased with the proceeds, of the instant noncitizen smuggling conspiracy.

bb. Defendant further admits that he is prohibited from possessing firearms and/or ammunition, and that he is not permitted to possess the shotgun and shotgun shells seized from his residence in California.

cc. Finally, Defendant admits that he personally obtained more than $500,000 in cash proceeds from the charged noncitizen smuggling conspiracy. Defendant admits that he spent, dissipated, and/or transferred to India, any unrecovered portion of these proceeds.

The parties agree that the Court may consider additional facts contained in the Presentence Report (subject to standard objections by the parties) and/or that may be presented by the United States or SINGH at the time of sentencing, and that the factual statement contained herein is not intended to limit the facts that the parties may present to the Court at the time of sentencing.

10. **Sentencing Factors**. The parties agree that the following Sentencing Guidelines provisions apply to this case:

Plea Agreement - 13
U.S. v. Singh, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

      a.    A base offense level of 25 under USSG §§ 2S1.1(a) because the offense level for the underlying offense from which the laundered funds were derived is 25 based on the following provisions:

          i.    Under USSG § 2L1.1(a)(3), a base offense level of 12;

          ii.    Under USSG § 2L1.1(b)(2), a nine-level increase because the offense involved the smuggling, transporting, or harboring of one hundred or more unlawful noncitizen;

          iii.    Under USSG § 2L1.1(b)(3)(B), a four-level increase because SINGH has two (or more) convictions for felony immigration and naturalization offenses, each conviction arising out of a separate prosecution.

      b.    A one-level increase under USSG § 2S1.1(b)(2)(A) because SINGH was convicted under 18 U.S.C. § 1957; and

      c.    A three-level decrease under USSG § 3E1.1(a) for acceptance of responsibility, as further described in Paragraph 11.

The parties agree they are free to present arguments regarding the applicability of all other provisions of the United States Sentencing Guidelines. Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

11.    **Acceptance of Responsibility.** At sentencing, *if* the Court concludes Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the Court to decrease the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of Defendant's intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

Plea Agreement - 14
U.S. v. Singh, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

12. **Agreed Recommendation Regarding Imprisonment**. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the parties agree to jointly recommend that the appropriate term of imprisonment to be imposed by the Court at the time of sentencing is 45 months. Defendant understands that this recommendation is not binding on the Court and the Court may reject the recommendation of the parties and may impose any term of imprisonment up to the statutory maximum penalty authorized by law. Defendant further understands that Defendant cannot withdraw a guilty plea simply because of the sentence imposed by the Court. Except as otherwise provided in this Plea Agreement, the parties are free to present arguments regarding any other aspect of sentencing.

13. **Forfeiture**. Defendant understands that the forfeiture of property is part of the sentence that must be imposed in this case. Defendant agrees to forfeit to the United States immediately his right, title, and interest in any property that constitutes, or is traceable to, proceeds of his commission of Conspiracy to Transport and Harbor Certain Aliens for Profit, and all property that facilitated the offense. All such property is forfeitable pursuant to Title 18, United States Code, Section 982(a)(6)(A), Title 8, United States Code, Section 1324(b)(1), by way of Title 28, United States Code, Section 2461(c), and includes but is not limited to:

   a. $41,293 in U.S. currency that was seized from his residence at 10074 Dona Neely Way, Elk Grove, CA, on May 24, 2022;

   b. $3,470 in Canadian currency that was seized from his residence at 10074 Dona Neely Way, Elk Grove, CA, on May 24, 2022;

   c. $1,000 in Euros that was seized from his residence at 10074 Dona Neely Way, Elk Grove, CA, on May 24, 2022;

   d. $4,116 in U.S. currency that was seized from his residence at 2743 Fiddleback St. NE, Lacey, WA, on May 24, 2022;

   e. A Secure Spend prepaid Mastercard that was seized from his residence at 2743 Fiddleback St. NE, Lacey, WA, on May 24, 2022;

Plea Agreement - 15
U.S. v. Singh, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

   f. An Uber Gift card that was seized from his residence at 2743 Fiddleback St. NE, Lacey, WA, on May 24, 2022;

   g. $231 in U.S. currency that was seized from a white 2010 Nissan Armada, on May 24, 2022; and

   h. A sum of money in the amount of $500,000, representing unrecovered proceeds that RAJINDER PAL SINGH personally obtained from the Conspiracy to Transport and Harbor Certain Aliens for Profit.

 Defendant also agrees to forfeit to the United States immediately his right, title, and interest in any property involved in his commission of Conspiracy to Commit Money Laundering. All such property is forfeitable pursuant to Title 18, United States Code, Section 982(a)(1).

 Defendant agrees to fully assist the United States in the forfeiture of any forfeitable property and to take whatever steps are necessary to pass clear title to the United States, including but not limited to: surrendering title and executing any documents necessary to effect forfeiture; assisting in bringing any property located outside the United States within the jurisdiction of the United States; and taking whatever steps are necessary to ensure that property subject to forfeiture is not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture. Defendant agrees not to file a claim to any of this property in any federal forfeiture proceeding, administrative or judicial, that may be or has been initiated, or to otherwise contest any federal forfeiture proceeding that may be or has been initiated. Defendant also agrees he will not assist any party who may file a claim to this property in any federal forfeiture proceeding.

 The United States reserves its right to proceed against any remaining property not identified in this Plea Agreement, in which Defendant has any interest, if that property facilitated and/or constitutes, or is traceable to, proceeds of his commission of Conspiracy to Transport and Harbor Certain Aliens for Profit and/or if that property was involved in his commission of Conspiracy to Commit Money Laundering.

Plea Agreement - 16
U.S. v. Singh, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

14. **Abandonment of Contraband.** Defendant also agrees that, if any federal law enforcement agency seized any firearms, ammunition, or other illegal contraband that was in his direct or indirect control, including, but not limited to, the Akkar Model 612 12-Gauge Shotgun and associated ammunition seized from his residence at 13461 Marengo Road, Galt, California, he consents to the federal administrative disposition, official use, and/or destruction of that property.

15. **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Plea Agreement based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Plea Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

16. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that, if Defendant breaches this Plea Agreement: (a) the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence; (b) Defendant will not oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea

Plea Agreement - 17
U.S. v. Singh, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Agreement; and (c) Defendant waives any objection to the re-institution of any charges that previously were dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Plea Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of confinement (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Plea Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the Plea Agreement.

17. **Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant acknowledges that, by entering the guilty plea(s) required by this Plea Agreement, Defendant waives all rights to appeal from Defendant's conviction, and any pretrial rulings of the Court, and any rulings of the Court made prior to entry of the judgment of conviction. Defendant further agrees that, provided the Court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as determined by the Court at the time of sentencing, Defendant waives to the full extent of the law:

    a.    Any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the Court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable); and

Plea Agreement - 18
U.S. v. Singh, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

    b. Any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation.

  This waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of Defendant's confinement or the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

  If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

  18. **Voluntariness of Plea**. Defendant agrees that Defendant has entered into this Plea Agreement freely and voluntarily, and that no threats or promises were made to induce Defendant to enter a plea of guilty other than the promises contained in this Plea Agreement or set forth on the record at the change of plea hearing in this matter.

  19. **Statute of Limitations**. In the event this Plea Agreement is not accepted by the Court for any reason, or Defendant breaches any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

//
//
//

Plea Agreement - 19
U.S. v. Singh, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

20. **Completeness of Plea Agreement.** The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties, except as may be set forth on the record at the change of plea hearing in this matter. This Plea Agreement binds only the United States Attorney's Office for the Western District of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this 15th day of February, 2023.

RAJINDER PAL SINGH
Defendant

CHRIS BLACK
Attorney for Defendant

THOMAS WOODS
Assistant United States Attorney

JOSEPH SILVIO
Assistant United States Attorney

Plea Agreement - 20
U.S. v. Singh, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970