The Honorable John C. Coughenour

# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAJINDER PAL SINGH, aka JASPAL GILL,<br><br>Defendant. | NO. CR22-079 JCC<br><br>UNITED STATES' SENTENCING MEMORANDUM |

## I.   INTRODUCTION

Over a four-year period, Rajinder Pal Singh, and his coconspirators, operated an international enterprise responsible for smuggling hundreds of Indian nationals into the United States in violation of U.S. immigration law. The conduct of the conspiracy demonstrated an utter disregard for the laws of the United States, represented a threat to security of the United States, and similarly posed a threat to the individuals unlawfully smuggled by Singh and members of the larger smuggling organization.

Given Singh's yearslong participation as a key member of the conspiracy, the government is recommending a custodial sentence of forty-five months, followed by three years of supervised release.

U.S. Sentencing Memorandum - 1
*United States v. Rajinder Pal Singh*, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## II.     FACTS

### A.     Background of Investigation

In 2018, Homeland Security Investigations (HSI) Blaine began investigating a human trafficking organization that was suspected of smuggling noncitizens into the United States through the U.S. – Canada border in Whatcom County, Washington. During the investigation, agents determined that the smuggling organization used Uber drivers to transport undocumented noncitizens from the U.S. – Canada border to various locations in the greater Seattle area.

### B.     Rajinder Pal Singh's Role

#### *The Noncitizen Smuggling Conspiracy*

Singh played a key role in the noncitizens smuggling conspiracy and was the principal U.S.-based coconspirator on the West Coast. Among the acts that Singh took in furtherance of the conspiracy were: 1) arranging transportation for the smuggled noncitizens upon their unlawful entry into the United States; 2) coordinating the temporary lodging of the smuggled noncitizens within the Western District of Washington; and 3) making arrangements for, or coordinating with other coconspirators, the transportation of the smuggled noncitizens from the Washington District of Washington to the noncitizens' ultimate destinations throughout the United States.

Prior to the unlawful entry of the noncitizens into the United States, Singh would coordinate with members of the conspiracy who housed the noncitizens in British Columbia. Singh and his coconspirators would discuss—among other matters related to the conspiracy—the location where the noncitizens would make their unlawful entry and the approximate time that the smuggling event would take place.

Once an illegal crossing was underway, Singh and his co-conspirators would use a GPS tracking application to monitor the location of the noncitizens and direct them to rendezvous points inside the United States. Once Singh saw on GPS tracking application that the group was close to their rendezvous point, Singh would order an Uber—driven by

U.S. Sentencing Memorandum - 2
*United States v. Rajinder Pal Singh*, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

an unwitting accomplice—to transport the smuggled noncitizens to various locations within the greater Seattle-area.

These Uber trips always involved two legs. The first leg of the trip would originate at the rendezvous point near the U.S. – Canada border and would terminate at an intermediate location—most often Sea-Tac International Airport. The second leg would then commence from the vicinity of the prior drop-off location and would terminate near a house located in Kent, Washington, near a house owned by Singh's spouse in Lacey, Washington, or at motels in the greater Seattle-area.

All told from mid-2018 until May 2022, using at least seventeen different Uber accounts—all with false identity information—Singh arranged more than 600 trips involving the transport of Indian nationals who had been unlawfully smuggled into the United States by Singh and his coconspirators. These split Uber trips involved more than one-hundred different unwitting Uber drivers.

In the earlier part of the conspiracy, the noncitizens smuggled by Singh, were temporarily housed at a residence in Kent, Washington—operated by one of Singh's coconspirators. Once the noncitizens were at the Kent house, Singh coordinated with other members of the conspiracy who arranged transportation to destinations throughout the United States.

Singh and his coconspirators engaged in this conduct until March 2020 when, based upon travel limitations imposed due to the Global Pandemic, smuggling activities ceased. However, in July 2021, as soon as Canada eased pandemic-related travel restrictions, Singh and his coconspirators resumed their noncitizen smuggling activities.

Once operations resumed, Singh began to use a Lacey, Washington, residence—owned by his spouse—to harbor the smuggled noncitizens prior to arranging travel to their ultimate destination. Indeed, at the time of Singh's arrest at the Lacey, Washington, residence in May 2022, investigators also encountered a noncitizen that Singh, and the larger smuggling organization, had just smuggled into the United States.

U.S. Sentencing Memorandum - 3
*United States v. Rajinder Pal Singh*, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*The Money Laundering Conspiracy*

In January 2022, Singh participated in the unlawful smuggling of two Indian Nationals into the United States. Once Singh and his coconspirators had successfully smuggled these two individuals into the United States, Singh requested—via a cooperating source ("CS-1")—payment of $11,000 per smuggled noncitizen. Singh provided specific instructions to CS-1 for how the families of the individuals smuggled into the United States would pay the organization's smuggling fee. Singh's instructions involved the conversion of $22,000 to a cashier's check in New York, the deposit of that check by a coconspirator in Kentucky, transfer of funds to that coconspirator's retirement account, and ultimate receipt of the smuggling fees by a coconspirator based in Canada.

Additionally, during the noncitizen smuggling conspiracy, Singh regularly accessed the main operating bank account (Acct -1219) for Iknaam Transport—a trucking company held in the name of Singh's wife. During the time that Singh was engaged in the conspiracy, Singh regularly made—or caused deposits to be made—deposits of illicit proceeds into Acct -1219.

For example, in September 2019, there were fourteen in-branch or ATM deposits—totaling $193,980—credited to Acct -1219. Singh made six of these deposits—totaling $106,480. Similarly, over a two-month period in late 2021, over eight separate transactions—all at Singh's direction—individuals with no business connection to Iknaam Transport made cash deposits into Acct -1219 totaling $78,300. These eight cash deposits were all between $9,500 and $9,900 and were made at banks in Florida, Georgia, and Southern California.

Singh also used Acct -1219 to pay expenses associated with the organization's noncitizen smuggling activities. Specifically, from January 2021, through May 2022, Singh knowingly made—or caused to be made—transfers totaling more than $79,000 from Acct -1219 to Singh's Capital One card, with the pseudonym "Jaipaul Singh."

U.S. Sentencing Memorandum - 4
*United States v. Rajinder Pal Singh*, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Submission of Fraudulent Documents in Immigration Bond Proceedings*

Furthermore, as part of the noncitizen smuggling conspiracy, Singh generated fraudulent bond documents that were submitted in bond hearings before Immigration Judges in Tacoma, Washington. The fraudulent documents Singh created used the identities of actual individuals, and included false letters of support and familial ties, doctored utility bills, and altered federal tax returns—purportedly showing that the bond "sponsor" had sufficient financial resources to support the noncitizen seeking release from immigration custody.

Singh sent these fraudulent bond packets to at least two immigration attorneys who he had hired to represent noncitizens—smuggled by the organization—but who had been apprehended by immigration authorities upon their unlawful entry into the United States. Again, Singh used Acct -1219 to make multiple payments to these immigration attorneys for legal services provided to the detained noncitizens who had been apprehended by immigration authorities upon their unlawful entry into the United States.

### III.  PROCEDURAL HISTORY

On May 25, 2022, Singh made his initial appearance on a complaint in this matter. Dkt. 6. Singh stipulated to detention, and he has been detained at FDC SeaTac since his arrest. *Id*. Singh was indicted on a single count of *Conspiracy to Transport and Harbor Certain Aliens[1] for Profit* (Count 1)*,* in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (iii), and (v)(I), and (a)(1)(B)(i), on June 1, 2022. Dkt. 11.

On February 15, 2023, Singh pleaded guilty to a two-count Superseding Information charging *Conspiracy to Transport and Harbor Certain Aliens for Profit* (Count 1)*,* in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (iii), and (v)(I), and (a)(1)(B)(i), and *Conspiracy*

---

[1] The word "alien" is used in Title 8 of the United States Code. Throughout this sentencing memo, and consistent with Executive Branch policy, when referencing the formal title of an offense in Title 8 of the United States Code, the term "alien" is used. When not specifically referring to the formal title of an offense in the United States Code, the term "noncitizen" is used in lieu of the term "alien."

U.S. Sentencing Memorandum - 5
*United States v. Rajinder Pal Singh*, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*to Launder Monetary Instruments* (Count 2), in violation of 18 U.S.C. §§ 1957 and 1956(h). Dkts. 25, 29.

## IV. GUIDELINES

Pursuant to the plea agreement, the parties have agreed that pursuant to USSG § 2S1.1(a) the base offense level is 25. Dkt. 29 at ¶ 10a. This includes an offense level of 12 pursuant to USSG § 2L1.1(a)(3); a nine-level increase pursuant to USSG § 2L1.1(b)(2) (offense involved the smuggling, transporting, or harboring of one hundred or more unlawful noncitizens), and a four-level increase pursuant to USSG § 2L1.1(b)(3) (two prior convictions for felony immigration and naturalization offenses, each conviction arising out of a separate prosecution). *Id.*; PSR at ¶¶ 38-40. With an additional one-level increase pursuant to USSG § 2S1.1(b)(2)(A), the adjusted offense level is 26. *Id.*; PSR at ¶ 45.

Assuming a three-level reduction for acceptance of responsibility, the government agrees with the calculation of U.S. Probation that the total offense level is 23. PSR at ¶ 47.

Singh has been convicted of *Making False Statements in an Application for U.S. Passport* and *Bank Fraud* (District of Oregon, 2003) and Illegal Reentry After Deportation and Bank Fraud (Western District of Washington, 2009). PSR at ¶¶ 49-50. These convictions result in six criminal history points, and a resulting Criminal History Category III. PSR at ¶ 51.

With a total offense level of 23, and CHC III, the resulting advisory Guidelines range is 57 – 71 months. PSR at ¶ 79.

## V. RECOMMENDATION AND JUSTIFICATION

The government is recommending a custodial sentence of forty-five months, with a three-year term of supervision to follow. This recommendation is appropriate considering the factors set forth in 18 U.S.C. § 3553(a). Section 3553(a) requires the Court to fashion a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from further crimes of the defendant, and provide the defendant with

U.S. Sentencing Memorandum - 6
*United States v. Rajinder Pal Singh*, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

needed training, care, or treatment. This Court is also to consider the nature and circumstances of the offense, the history and characteristics of the offender, the kinds of sentences available, the policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims of the defendant's crimes.

### A.   The Seriousness of the Offense and Singh's Role

Singh and his coconspirators engaged in an international human smuggling enterprise with operations in India, Canada, and the United States. For nearly four years, Singh oversaw smuggling operations on the West Coast of the United States. Singh was the principal coconspirator that was responsible for the noncitizens once they entered the United States and maintained responsibility of the noncitizens until they were transported to their ultimate destination outside of Washington States.

Through his use of Uber to transport noncitizens from the U.S. – Canada border to stash locations within the greater Seattle area, Singh coopted more than 100 Uber drivers into unwittingly acting on behalf of the noncitizen smuggling conspiracy. Moreover, if noncitizens were apprehended by immigration authorities, Singh was there to provide fraudulent documentation that was submitted to Immigration Judges presiding over bond proceedings in Tacoma, Washington. In these bond proceedings, Singh again enlisted unwitting accomplices—this time immigration attorneys hired by Singh—whom Singh would provide these fraudulent bond materials for submission in Immigration Court. Finally, Singh was integrally involved in the laundering of proceeds generated by the illicit conspiracy. Among other means, Singh used the bank account of his wife's ostensibly legitimate trucking company as a mechanism for laundering the conspiracy's illicit smuggling fees.

The seriousness of Singh's conduct is underscored by the fact that Singh knows— firsthand—the crippling impact that smuggling fees have on those individuals that are unlawfully brought into the United States by smuggling organizations such as the one of

U.S. Sentencing Memorandum - 7
*United States v. Rajinder Pal Singh*, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

which Singh was such an integral part. Indeed, according to his report to U.S. Probation, Singh engaged in the instant offense conduct—in part—because he was saddled with his own smuggling debt of $60,000. Notwithstanding his own experience, Singh was apparently content to prosper at the financial expense of others, amassing at least $500,000 in proceeds from his participation in the instant offense conduct.

In short, Singh's participation in the instant conspiracy, and the attendant impact upon others, warrants the recommended sentence.

**B.    Singh's History and Characteristics**

Certain aspects of Singh's history mitigating. Specifically, Government acknowledges that Singh's initial unlawful entry to the United States was due to armed conflict and political strife in his native Punjab. *Id*. at ¶ 56. The government also acknowledges that Singh experienced poverty and trauma in his youth and reported that that he did not feel that his family could protect him. *Id*. at ¶¶ 67-68. The government also notes that Singh has familial ties to the United States and his deportation will likely result in separation from his children. *Id*. at ¶ 61. Though Singh has some moderate medical concerns, neither his medical nor mental health history is particularly mitigating. *Id*. at ¶¶ 62-65.

Conversely, Singh's immigration history and history of recidivism is particularly aggravating. After initially being ordered deported in 1998, Singh evaded immigration enforcement by moving from California to Washington. *Id*. at ¶ 58. Singh then engaged in criminal conduct that led to his first Federal conviction and deportation in January 2004. *Id*. at ¶ 59. Singh unlawfully reentered the United States two years later. *Id*. After his unlawful reentry, Singh again found himself committing crimes that resulted in a second Federal conviction and another deportation in December 2011. *Id*. at ¶ 60. This time, Singh illegally reentered the United States within a year. *Id*. Ultimately—after this third unlawful entry—Singh again found himself engaged in unlawful conduct. But, as discussed herein,

U.S. Sentencing Memorandum - 8
*United States v. Rajinder Pal Singh*, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the instant offense conduct represents a significant increase in severity when compared to Singh's prior Federal convictions.

Furthermore, though Singh has spent most of his adult life in the United States, he has an extremely limited history of (self-reported) employment. *Id*. at ¶¶ 71-73.

Singh's largely aggravating personal history and characteristics support the government's recommendation for a custodial sentence of forty-five months.

**C.      Promotion of Respect for the Law, Deterrence, Just Punishment, and Protecting the Public from Future Crimes of the Defendant**

The recommended sentence is needed to promote respect for the law, deter Singh and others from further crime, and protect the public. As explained above, Singh was a central member of an international smuggling conspiracy that operated in India, Canada, and the United States. The members of this conspiracy charged fees in excess of $70,000. Singh's participation in a conspiracy that preyed upon the hopes for a better life in the United States, while saddling those smuggled with crushing debt, warrants substantial sanction.

Moreover, Singh is a recidivist who has been prosecuted in Federal Court on two prior occasions. Instead of being substantially deterred by multiple deportations, and progressively severe custodial sentences (21 months and 27 months), Singh has repeated unlawfully reentered the United States. What's more, Singh's return to the United States has not been to simply reunite with family. Rather, upon each return, Singh has continued to engage in unlawful conduct. Moreover, the instant offense conduct demonstrates an escalation in the severity of his crimes. As such, the recommended sentence is necessary to send a clear message to Singh that—assuming deportation upon service of his sentence—he must remain in India unless and until he receives lawful authority to reenter the United States. And his failure to do so, will be met with increasingly severe sanction.

//

//

U.S. Sentencing Memorandum - 9
*United States v. Rajinder Pal Singh*, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## VI.     CONCLUSION

For the reasons set forth above, the government recommends a custodial sentence of forty-five months followed by three years of supervised release.

Dated this 20th day of June, 2023.

NICHOLAS W. BROWN
United States Attorney

*/s/ Joseph C. Silvio*
JOSEPH C. SILVIO
Assistant United States Attorney
700 Stewart Street, # 5220
Seattle, Washington 98101
Telephone: (206) 553-7970
Email: joseph.silvio2@usdoj.gov

U.S. Sentencing Memorandum - 10
*United States v. Rajinder Pal Singh*, CR22-079 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970